## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

IN RE:        **HERBERT H. HOWARD**                    CASE NO. 16-14342-JDW

### RENASANT BANK'S OBJECTION TO CONFIRMATION
### OF DEBTOR'S CHAPTER 13 PLAN OF REORGANIZATION

Renasant Bank, ("Renasant" or "Bank"), files this Objection to Confirmation of the Chapter 13 Plan of Reorganization ("Plan") filed by the debtor, Herbert H. Howard. ("Debtor") ("Motion"), and in support thereof would show as follows, to-wit:

1.      This court has jurisdiction over the subject matter herein and the parties hereto pursuant to 28 U.S.C. §1334, 11 U.S.C. §§105, 506, 1322 and 1325, along with other related statutes and rules. This is a core proceeding as defined by 28 U.S.C. §157(b)(2)(A), and (G).

2.      On or about November 16, 2015, the Debtor, as Member, Manager and President of Triple HHH Trucking, LLC ("Triple HHH"), executed a Promissory Note ("Note") in the amount of $12,356.02, for the benefit of Renasant[1]. A copy of the Note is attached hereto and incorporated herein by reference as Exhibit "1." To secure the indebtedness due under the Note, the Debtor, as Member, Manager and President of Triple HHH, further executed a Commercial Security Agreement ("Security Agreement") granting Renasant a first, valid and perfected lien encumbering one (1) 2006 Freightliner CL1, bearing the serial number 1FUJA6C76LV59993. A copy of the Security Agreement is attached hereto and incorporated herein as Exhibit "2." A copy of the Mississippi Certificate of Title evidencing the Bank's first valid and perfected lien encumbering this tractor is incorporated herein as Collective Exhibit "5" as referenced below.

---

[1]   The Debtor is the sole member and perpetual General Member of Triple HHH.

3.      On or about February 24, 2016, the Debtor, as Chief Manager and Member of Triple

HHH, executed a U.S. Small Business Administration Note ("SBA Note") in the amount of

$250,000.00, for the ultimate benefit of Renasant. A copy of the SBA Note is attached hereto and

incorporated herein as reference as Exhibit "3." To secure the indebtedness due under the SBA

Note, the Debtor, again as Chief Manager and Member of Triple HHH, executed a U.S. Small

Business Administration Security Agreement ("SBA Security Agreement") granting Renasant a

first valid and perfected lien encumbering one (1) 2006 Freightliner Model ST2 VIN

#1FUJBBCK86LX02946, one (1) 2012 Freightliner Model CA 125SLP VIN

#1FUJGLDR3CSBF5023, one (1) 2006 Freightliner Model CL1 VIN #1FUJA6CV76LV59993[2],

one (1) 2016 SS407 Chemical Trailer VIN #3E1FB7233HSV22262, and one (1) 2016 SS407

Chemical Trailer VIN #3E1FB7235HSV22263 ("Collateral"). A copy of the SBA Security

Agreement is attached hereto and incorporated herein by reference as Exhibit "4." To further

secure the indebtedness, the Debtor, as Member, Manager and President of Triple HHH, granted

Renasant a valid and first perfected security interest in the Collateral. Copies of the State of

Mississippi Certificates of Title evidencing Renasant's lien in the Collateral are attached hereto and

incorporated herein as Collective Exhibit "5."

4.      On December 12, 2016 ("Petition Date"), the Debtor filed his voluntary petition

for relief pursuant to Chapter 13, Title 11 of the United States Code. Locke D. Barkley has been

appointed as his Chapter 13 trustee. As of the Petition Date, the Debtor owed Renasant the

aggregate amount of $251,901.39 under the Note and SBA Note.

5.      Along with their petition, the Debtor filed his Plan, a copy of which is attached

---

[2]  This Freightliner tractor serves as collateral for both the Note and SBA Note.

hereto and incorporated herein by reference as Exhibit "6." Unlike the companion and vague objections to secured claims filed by the Debtor, the Plan clearly proposes, inter alia, to "cram down" the value of the Collateral to $146,000.00 to which Renasant objects. As such, the Debtor's Plan fails to meet the general requirements of 11 U.S.C. §§ 506 and 1322 and, consequently, should not be confirmed pursuant to 11 U.S.C. § 1325. For the reasons set forth herein, Renasant objects to the Debtor's Plan and requests the entry of an order denying confirmation of same.

6.      Beyond the clear §506 valuation issues, the Plan also improperly seeks to reorganize and restructure the contractual relationship between the Bank and a non-debtor entity i.e. Triple HHH Trucking, LLC ("Triple HHH"). That entity, not the Debtor, is the obligor under the Note and SBA Note. The Debtor is a guarantor of Triple HHH's obligations owed Renasant pursuant to the referenced Notes. As such, the Debtor improperly seeks to employ Title 11 of the United States Code and the Plan to modify the indebtedness owed to Renasant by Triple HHH, a Mississippi limited liability company. Thus, absent Renasant's consent, the Plan fails to meet the statutory requirements of 11 U.S.C. § 1322 and, as such should not be confirmed pursuant to the directives of 11 U.S.C. § 1325.

7.      For other good and sufficient reasons to be assigned at a hearing regarding this matter. Renasant expressly reserves the right to amend this motion up to and during any hearing regarding same.

WHEREFORE, Renasant respectfully requests the entry of an order denying confirmation of the Plan as presently drawn or alternatively, entry of a confirmation order consistent with the relief requested herein and is acceptable to Renasant. Renasant prays for such other general and specific relief as this court may deem just.

THIS, the 23rd day of February, 2017.

Respectfully submitted,

RENASANT BANK

BY:    /s/ D. Andrew Phillips
D. ANDREW PHILLIPS (MSB #8509)
JAMES P. WILSON, JR. (TNB #018959)
ROSAMOND H. POSEY (MSB #101247)
MITCHELL, McNUTT & SAMS, P.A.
POST OFFICE BOX 947
OXFORD, MS 38655-0947
(662)234-4845

## CERTIFICATE OF SERVICE

I, D. Andrew Phillips, one of the attorneys for Renasant, do hereby certify that the following

Motion has been served electronically via ECF with a copy of the above Motion, as follows:

Douglas M. Engell, Esquire
dengell@dougengell.com

Locke D. Barkley, Esquire
sbeasley@barkley13.com

U.S. Trustee
USTPRegion08.me.ecf@usdoj.gov

THIS, the 23rd day of February, 2017.

/s/ D. Andrew Phillips
D. ANDREW PHILLIPS

559098

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $12,356.02 | 11-16-2015 | 05-03-2017 | | 0215 / TT | | 0728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  Triple HHH Trucking LLC
405 Poplar St
Grenada, MS 38901

Lender:  Renasant Bank
Grenada Office
1537 S Commerce St
PO Box 190
Grenada, MS 38901
(877) 367-5371

Principal Amount: $12,356.02                              Date of Note: November 16, 2015

**PROMISE TO PAY.** Triple HHH Trucking LLC ("Borrower") promises to pay to Renasant Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Twelve Thousand Three Hundred Fifty-six & 02/100 Dollars ($12,356.02), together with interest on the unpaid principal balance from November 16, 2015, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 9.100% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 17 payments of $735.30 each payment and an irregular last payment estimated at $735.37. Borrower's first payment is due December 3, 2015, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on May 3, 2017, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Renasant Bank, P O Box 4140 Tupelo, MS 38803.

**ADDITIONAL PREPAYMENT PROVISION.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater. However, in no event will the late charge exceed $50.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: titled collateral described in a Commercial Security Agreement dated November 16, 2015.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

EXHIBIT
1

**PROMISSORY NOTE**
(Continued)

Loan No: ███████                                                                                                    Page 2

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

TRIPLE HHH TRUCKING LLC

By: _Herbert H. Howard  Mem./Mgr./Pres._

Herbert  Howard,  Member/Manager/President  of
Triple HHH Trucking LLC

LaserPro, Ver. 15 x 20.032  Copr. D+h USA Corporation 1997, 2015.  All Rights Reserved  - MS  L\CFALPL\C30 FC  TR-6(107  PR-2)

[redacted]

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $12,356.02 | 11-16-2015 | 05-03-2017 | [redacted] | 0215 / TT | | 0728 | HJ |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Triple HHH Trucking LLC
405 Poplar St
Grenada, MS 38901

**Lender:** Renasant Bank
Grenada Office
1537 S Commerce St
PO Box 190
Grenada, MS 38901
(877) 367-5371

**LOAN TYPE.** This is a Fixed Rate (9.100%) Nondisclosable Loan to a Limited Liability Company for $12,356.02 due on May 3, 2017.

**PRIMARY PURPOSE OF LOAN.** *The primary purpose of this loan is for:*

☐ Personal, Family, or Household Purposes or Personal Investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Pay Off Loan to Purchase Truck No Additional Money.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $12,356.02 as follows:

| | |
|---|---|
| Amount paid on Borrower's account: | $12,356.02 |
| $12,356.02 Payment on Loan # 2513385-1 | |
| Note Principal: | $12,356.02 |

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED NOVEMBER 16, 2015.

**BORROWER:**

TRIPLE HHH TRUCKING LLC

By: Herbert H. Howard Mem/Mgr. / Pres.
Herbert Howard, Member/Manager/President of Triple HHH Trucking LLC

LaserPro, Ver. 15.4.20.033 Copr. D+H USA Corporation 1997, 2015. All Rights Reserved. - MS L:\CFI\LPL\I20.FC TR-44187 PR-31

[redacted]

# LOAN REQUEST SUMMARY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $12,356.02 | 11-16-2015 | 05-03-2017 | [redacted] | 0215 / TT | | 0728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Triple HHH Trucking LLC
405 Poplar St
Grenada, MS 38901

**Lender:** Renasant Bank
Grenada Office
1537 S Commerce St
PO Box 190
Grenada, MS 38901
(877) 367-5371

## INSTALLMENT LOAN
(Fixed Rate)

| | Financed | In Cash |
|---|---|---|
| AMOUNT REQUESTED: | $12,356.02 | |
| PREPAID FINANCE CHARGES: | 0.00 | |
| SECURITY INTEREST CHARGES: | 0.00 | |
| NOTE AMOUNT: | $12,356.02 | $0.00 |

PAYMENT CALCULATION:

| | |
|---|---|
| Interest Method: | 365/360 |
| Disbursement Date: | 11-16-2015 |
| First Payment Date: | 12-03-2015 |
| Due Date: | 05-03-2017 |
| Payment Period: | Monthly |
| Total Number of Pmts: | 18 |
| Interest Rate: | 9.100% |
| Credit Insurance: | None |
| Amount of Reg Pmt: | $735.30 |
| Final Payment: | $735.37 |

**Payment Schedule.** Borrower's payment schedule consists of the following: 17 monthly consecutive payments of $735.30 each, beginning December 3, 2015, with interest calculated on the unpaid principal balances at an interest rate of 9.100% per annum based on a year of 360 days; and one payment of $735.37 on May 3, 2017, with interest calculated on the unpaid principal balances at an interest rate of 9.100% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under the Note.

| APR | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| 9.239% | $879.45 | $12,356.02 | $13,235.47 |

COLLATERAL: Titled Collateral.

TRANSACTION NUMBER: [redacted]

NOTICE: This Loan Request Summary is for informational purposes only and does not obligate Lender in any way to make this loan or any other loan to Borrower. The fees and charges listed above are estimates only; and, if a loan is made, different or additional fees and charges may be imposed.

LaserPro Ver. 15.4.20.033 Copr. D+H USA Corporation 1997, 2015. All Rights Reserved. - MS L:\CFI\LPL\A10.FC TR-64187 PR-31

## COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $12,356.02 | 11-16-2015 | 05-03-2017 | ~~~~~~~~~~ | 0215 / TT | | 0728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Triple HHH Trucking LLC
405 Poplar St
Grenada, MS 38901

**Lender:** Renasant Bank
Grenada Office
1537 S Commerce St
PO Box 190
Grenada, MS  38901
(877) 367-5371

THIS COMMERCIAL SECURITY AGREEMENT dated November 16, 2015, is made and executed between Triple HHH Trucking LLC ("Grantor") and Renasant Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2006 Freightliner CL1 (Serial Number 1FUJA6C76LV59993)

In addition, the word "Collateral" also includes all of the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Mississippi, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done

**EXHIBIT**

2

## COMMERCIAL SECURITY AGREEMENT
Loan No: ███████████                    (Continued)                                          Page 2

on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: [redacted]                                                                                          Page 3

false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Mississippi Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Mississippi.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: [redacted]                                                                                              Page 4

to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Triple HHH Trucking LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Triple HHH Trucking LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Renasant Bank , its successors and assigns.

**Note.** The word "Note" means the Note dated November 16, 2015 and executed by Triple HHH Trucking LLC in the principal amount of $12,356.02, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 16, 2015.

GRANTOR:

TRIPLE HHH TRUCKING LLC

By: _Herbert H. Howard_  Member/Manager/President of
Triple HHH Trucking LLC



U.S. Small Business Administration

## NOTE

| SBA Loan # | ~~[redacted]~~ |
|---|---|
| SBA Loan Name | Triple HHH Trucking, LLC |
| Date | February _24_, 2016 |
| Loan Amount | $250,000.00 |
| Interest Rate | Prime plus Two Percent |
| Borrower | Triple HHH Trucking LLC |
| Operating Company | N/A |
| Lender | Renasant Bank |

1. **PROMISE TO PAY:**

   In return for the Loan, Borrower promises to pay to the order of Lender the amount of Two Hundred Fifty Thousand and 00/100 Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS:**

   "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

   "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

   "Loan" means the loan evidenced by this Note.

   "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

3. **PAYMENT TERMS:**

1



EXHIBIT

_3_

Borrower must make all payments at the place Lender designates.  The payment terms for this Note are:

**Maturity:**  This Note will mature in 6 years from date of Note.

**Repayment Terms:**  The interest rate on this Note will fluctuate.  The initial interest rate is 5.50% per year.  This initial rate is the prime rate in effect on the first business day of the month in which SBA received the loan application, plus 2.00%.  The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower must pay principal and interest payments of $4,084.47 every month, beginning two months from the month this Note is dated; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or any interest rate change occurs.  Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.00% above the Prime Rate.  Lender will adjust the interest rate on the first calendar day of each change period.  The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default.  If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.
**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

**Borrower may prepay this Note.**  Borrower may prepay 20% or less of the unpaid principal balance at any time without notice.  If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:

    a.  Give Lender written notice;

    b.  Pay all accrued interest; and

    c.  If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date Lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 6 years from date of Note.

**Late Charge:**  If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

2

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due;

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local

3

control, penalty, tax, or liability.  As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A.   All individuals and entities signing this Note are jointly and severally liable.

B.   Borrower waives all suretyship defenses.

C.   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.   Lender may exercise any of its rights separately or together, as many times and in any order it chooses.  Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.   If any part of this Note is unenforceable, all other parts remain in effect.

G.   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor.  Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

None.

11.  BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

TRIPLE HHH TRUCKING LLC

By: _Herbert H. Howard_

Name:  Herbert H. Howard
Title:    Chief Manager and Member

5



U.S. Small Business Administration

SECURITY AGREEMENT

| SBA Loan # | |
|---|---|
| SBA Loan Name | Triple HHH Trucking, LLC |
| Debtor | Triple HHH Trucking LLC |
| Borrower | Triple HHH Trucking LLC |
| Secured Party | Renasant Bank |
| Date | February 24, 2016 |
| Note Amount | $250,000.00 |

1. DEFINITIONS.

Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2. GRANT OF SECURITY INTEREST.

For value received, the Debtor grants to the Secured Party a security interest in the property described below in Paragraph 4 (the "Collateral").

3. OBLIGATIONS SECURED.

This Agreement secures the payment and performance of: (a) all obligations under a Note of even date herewith, made by **Triple HHH Trucking LLC**, made payable to **Renasant Bank**, in the amount of **$250,000.00** ("Note"), including costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Debtor in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations. The Note and all other obligations secured hereby are collectively called the "Obligations."

4. COLLATERAL DESCRIPTION.

The Collateral in which this security interest is granted is all of the Debtor's property described below, and indicated by an

EXHIBIT
4
tabbies

"X" or other mark on the applicable line, now owned or hereafter acquired, together with all replacements, accessions, proceeds, and products.

☐ a. Equipment                          ☐ f. Chattel Paper

☐ b. Fixtures                           ☐ g. General Intangibles

☐ c. Inventory                          ☐ h. Documents

☐ d. Accounts                           ☐ i. Farm Products

☐ e. Instruments                        ☐ j. Deposit Accounts

                                        ☐ k. Investment Property

☒ l. Titled motor vehicles, including mobile or manufactured homes (list make, model, and serial #):

2006 Freightliner Model ST2 VIN #1FUJBBCK86LX02946

2012 Freightliner Model CA125SLP VIN #1FUJGLDR3CSBF5023

2006 Freightliner Model CL1 VIN #1FUJA6CV76LV59993

2016 SS407 Chemical Trailer VIN #3E1FB7233HSV22262

2016 SS407 Chemical Trailer VIN #3E1FB7235HSV22263

☐ m. Other:  Insert specific description of other forms of Collateral not included in categories a through k above (for example, specific commercial tort claim, letter-of-credit rights):

_____

_____

5.  RESTRICTIONS ON COLLATERAL TRANSFER.

Debtor will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Debtor's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Debtor may sell inventory in the ordinary course of business on customary terms.  Debtor may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6.  MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.

Debtor must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location.  Debtor hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice.  Debtor must:  (a) maintain the Collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party.  Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7. CHANGES TO DEBTOR'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.

Debtor must notify Secured Party by written or electronic communication not less than thirty (30) days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Debtor will pay for the preparation and filing of all documents, Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8. PERFECTION OF SECURITY INTEREST.

Debtor consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Debtor must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Debtor will pay the filing and recording costs of any documents relating to Secured Party's security interest. Debtor ratifies all previous filings and recordings, including financing statements and notations on certificates of title. Debtor will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9. DEFAULT.

Debtor is in default under this Agreement if: (a) Debtor fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Debtor makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Debtor must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Debtor or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Debtor waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10. FEDERAL RIGHTS.

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Debtor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

11.    GOVERNING LAW.

Unless SBA is the holder of the Note, in which case federal law will govern, Debtor and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Debtor is located, including the UCC as in effect in such

jurisdiction and without reference to its conflicts of laws principles.

12. SECURED PARTY RIGHTS.

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13. SEVERABILITY.

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

14. DEBTOR CERTIFICATIONS.

Debtor certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Debtor's name and not in the name of any other organization or individual; (c) Debtor has the legal authority to grant the security interest in the Collateral; (d) Debtor's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; and (g) Debtor has read and understands the meaning and effect of all terms of this Agreement.

15. DEBTOR NAME(S) AND SIGNATURE(S).

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Debtor under this Agreement.

TRIPLE HHH TRUCKING LLC

By: *Herbert H. Howard*

Herbert H. Howard, Chief Manager and
Member

## CERTIFICATION
## OF FIXTURES, MACHINERY AND EQUIPMENT

The undersigned Borrower hereby certifies that as of this date it is the owner of the fixtures, machinery and equipment listed on **Exhibit A** which is attached hereto and incorporated herein by reference, all of which are located at certain real property commonly known as **405 Poplar Street, Grenada, Mississippi 38901.**

This _24th_ day of ___February___, 2016.

**BORROWER:**

TRIPLE HHH TRUCKING LLC, a Mississippi limited liability company

By: _Herbert H. Howard_

Herbert H. Howard, Chief Manager and Member

# EXHIBIT A

<u>List of Personal Property</u>

Vehicle VIN #1FUJBBCK86LX02946

Vehicle VIN #1FUJGLDR3CSBF5023

Vehicle VIN #1FUJA6CV76LV59993

Trailer VIN #3E1FB7233HSV22262

Trailer VIN #3E1FB7235HSV22263

Form 79-001-11-7-1-000

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 1FUJA6CV76LV59993 | FRHT | 2006 | CL1 | TT | C998897-02 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL. | NEW / USED | TYPE OF VEHICLE | PASS. OR GVW |
|---|---|---|---|---|---|
| 06052014 | | 06 | X | TK-TR | 000 |

ODOMETER - TENTHS NOT INCLUDED

000000

OWNER

TRIPLE HHH TRUCKING LLC
405 POPLAR ST
GRENADA         MS 38901

1ST LIENHOLDER (OR OWNER IF NO LIEN)
RENASANT BANK
P O BOX 709
TUPELO          MS 38802

DATE:

MONTH  I  DAY  I  YEAR
04/18/2014

2ND LIENHOLDER

DATE:

MONTH  I  DAY  I  YEAR

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIENS ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____  BY _____
(LIENHOLDER)                          (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 ____

2ND LIEN _____  BY _____
(LIENHOLDER)                          (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 ____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THE

THE 05 DAY OF JUNE 20 14
14155715015         01655

CONTROL NUMBER
20972459

DEPARTMENT OF REVENUE

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 83-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

VOID IF ALTERED



EXHIBIT
collective
5
tabbies

# CERTIFICATE OF TITLE

Form 79-001-11-7-1-000

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 1FUJGLDR3CSBF5023 | FRHT | 2012 | 125 | TR | H590574-01 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL. | NEW / USED | TYPE OF VEHICLE | PASS. OR GVW |
|---|---|---|---|---|---|
| 04272016 | | 06 | X | TK-TR | 000 |

ODOMETER - TENTHS NOT INCLUDED

000000

OWNER

TRIPLE HHH TRUCKING LLC
PO BOX 237
GRENADA     MS 38902

1ST LIENHOLDER (OR OWNER IF NO LIEN)

RENASANT BANK
P O BOX 709
TUPELO     MS 38802

DATE:

MONTH  I  DAY  I  YEAR

03/03/2016

2ND LIENHOLDER

DATE:

MONTH  I  DAY  I  YEAR

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____    BY _____
                        (LIENHOLDER)                                    (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 ____

2ND LIEN _____    BY _____
                        (LIENHOLDER)                                    (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 ____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE **27** DAY OF **APRIL**  20 **16**

16117051977        01576

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

CONTROL NUMBER

21075043

MISSISSIPPI DEPARTMENT OF REVENUE

VOID IF ALTERED

# CERTIFICATE OF TITLE

Form 79-001-11-7-1-000

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 3E1FB7235HSV22263 | BULK | 2017 | SS | TL | H590562-01 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL. | NEW / USED | TYPE OF VEHICLE | PASS. OR GVW |
|---|---|---|---|---|---|
| 04272016 | 03012016 | 00 | X | TK-TL | 000 |

ODOMETER - TENTHS NOT INCLUDED

000000

OWNER

TRIPLE HHH TRUCKING LLC
PO BOX 237
GRENADA        MS 38902

1ST LIENHOLDER (OR OWNER IF NO LIEN)

RENASANT BANK
P O BOX 709
TUPELO        MS 38802

DATE:

MONTH   |   DAY   |   YEAR

03/01/2016

2ND LIENHOLDER

DATE:

MONTH   |   DAY   |   YEAR

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
                              (LIENHOLDER)                                    (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 _____

2ND LIEN _____ BY _____
                              (LIENHOLDER)                                    (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 _____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE   27 DAY OF APRIL   20 16
16117051976                    01575

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

CONTROL NUMBER

2 1 0 7 5 0 4 2



MISSISSIPPI DEPARTMENT OF REVENUE

*Ed Morgan*

VOID IF ALTERED

# CERTIFICATE OF TITLE

Form 79-001-11-7-1-000

## STATE OF MISSISSIPPI

ORIGINAL

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 3E1FB7233HSV2262 | BULK | 2017 | SS | TL | H590543-01 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL. | NEW / USED | TYPE OF VEHICLE | PASS. OR GVW |
|---|---|---|---|---|---|
| 04272016 | 03012016 | 00 | X | TK-TL | 000 |

ODOMETER - TENTHS NOT INCLUDED

000000

OWNER

TRIPLE HHH TRUCKING LLC
PO BOX 237
GRENADA    MS 38902

1ST LIENHOLDER (OR OWNER IF NO LIEN)

RENASANT BANK
P O BOX 709
TUPELO    MS 38802

DATE:

MONTH  I  DAY  I  YEAR

03/01/2016

2ND LIENHOLDER

DATE:

MONTH  I  DAY  I  YEAR

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREIN HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
                    (LIENHOLDER)                              (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 _____

2ND LIEN _____ BY _____
                    (LIENHOLDER)                              (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 _____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE  27 DAY OF  APRIL  20 16
16117051975                        01574

CONTROL NUMBER

21075041

MISSISSIPPI DEPARTMENT OF REVENUE

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

VOID IF ALTERED

# CERTIFICATE OF TITLE

Form 79-001-11-7-1-000

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 1FUJBBCK86LX02946 | FRHT | 2006 | ST2 | TR | G236784-03 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL. | NEW / USED | TYPE OF VEHICLE | PASS. OR GVW |
|---|---|---|---|---|---|
| 01232017 | | 06 | X | TRUCK | 000 |

ODOMETER - TENTHS NOT INCLUDED

000000

EXEMPT FROM DISCLOSURE
REQUIREMENTS

OWNER
TRIPLE HHH TRUCKING LLC
405 POPLAR ST
GRENADA      MS 38901

1ST LIENHOLDER (OR OWNER IF NO LIEN)
RENASANT BANK
P O BOX 709
TUPELO      MS 38802

DATE:

MONTH | DAY | YEAR
11/16/2015

2ND LIENHOLDER

DATE:

MONTH | DAY | YEAR

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREIN HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
              (LIENHOLDER)                                    (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 ____

2ND LIEN _____ BY _____
              (LIENHOLDER)                                    (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 ____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS
THE 23 DAY OF JANUARY 20 17
17020039220      01262



CONTROL NUMBER
2 0 0 2 2 8 2 0

MISSISSIPPI DEPARTMENT OF REVENUE

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office, as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed, with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

*Herb Frierson*

VOID IF ALTERED

# CERTIFICATE OF TITLE

Form 79-001-11-7-1-000

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 1FUJBBCK86LX02946 | FRHT | 2006 | ST2 | TR | G236784-02 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL. | NEW / USED | TYPE OF VEHICLE | PASS. OR GVW |
|---|---|---|---|---|---|
| 09302015 | | 06 | X | TRUCK | 000 |

ODOMETER - TENTHS NOT INCLUDED

631472

ACTUAL MILEAGE

OWNER

TRIPLE HHH TRUKING LLC
405 POPLAR ST
GRENADA        MS 38901

1ST LIENHOLDER (OR OWNER IF NO LIEN)

TRIPLE HHH TRUKING LLC
405 POPLAR ST
GRENADA        MS 38901

DATE:
MONTH  |  DAY  |  YEAR

2ND LIEN HOLDER

DATE:
MONTH  |  DAY  |  YEAR

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
                (LIENHOLDER)                (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 _____

2ND LIEN _____ BY _____
                (LIENHOLDER)                (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 _____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS
THE 30 DAY OF SEPTEMBER 20 15
15272060127          01730

CONTROL NUMBER
20645004

MISSISSIPPI DEPARTMENT OF REVENUE

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

**VOID IF ALTERED**

Form 78-002-10-7-1-000 (Rev. 10/10)

7500210710000

**STATE OF MISSISSIPPI**
DEPARTMENT OF REVENUE
TITLE BUREAU - POST OFFICE BOX 1383
JACKSON, MISSISSIPPI 39215

APPLICATION FOR CERTIFICATE OF TITLE

For Title Bureau Use Only

ENTER COMPLETE MISSISSIPPI TITLE NO.

**G236784-02**

9 DIGITS - EXAMPLE: 1234567-01

First Miss. Title - Attach M.C.O., or other state's title.

TITLE TYPE: ORIGINAL (O)

Attach Miss. Title. CORRECTION (C)

Attach Miss. Title. TRANSFER (T)

Attach Miss. Title. LIEN CHANGE (L) **L**

VEHICLE TYPE:

HAIL (H)   FLOOD (F)   SALVAGE (S)   REBUILT (R)   OTHER

PASS. (1)   TRK. TRACTOR (2)   AMB. (3)   TRK. (4) **4**   BUS (5)   PVT. TLR. (6)   MOTORCYCLE (7)   MOTOR HOME CAB (8)   TRK. TLR. (9)

| YEAR | MAKE | MODEL/SERIES | CYL | NO. PASS OR GVW | BODY TYPE | COLOR | NEW | USED | FUEL | VEHICLE IDENTIFICATION NO. (VIN) | ODOMETER CODE EXAMPLE 03-123456 |
|------|------|--------------|-----|-----------------|-----------|-------|-----|------|------|----------------------------------|------|
| 2006 | FRHT | ST2 | 06 | 000 | TR | | | x | | xx  1FUJBBCK86LX02946 | 00- |

FROM WHOM PURCHASED (NAME)   STREET / APT. / P.O. BOX

CODE: 00-ACTUAL
11-EXCEEDS LIMIT
12-NOT ACTUAL- DISCREPANCY

| CITY | STATE | ZIP CODE | PREVIOUS TITLE NO. | TITLING STATE | TAG NO. | EXP. YR. |
|------|-------|----------|--------------------|---------------|---------|----------|
| | | | | | | |

OWNER(S) LAST NAME, FIRST, INITIAL (&; &/OR; OR) FIRST, INITIAL   STREET / APT. / P.O. BOX/

**Triple HHH Trucking LLC**                **405 Poplar Street**

| CITY | STATE | ZIP CODE | CO. CODE | DATE OF PURCHASE | | | TRADE IN | | PURCHASED OUT OF STATE | |
|------|-------|----------|----------|------|-----|----|----------|---|---|---|
| | | | | MO. | DAY | YR | YES | NO | YES | NO |
| Grenada | MS | x 38901 | 220 | 09 | 30 | 2016 | | X | | X |

1ST LIENHOLDER NAME   STREET ADDRESS

**Renasant Bank**                **P. O. Box 709**

| CITY | STATE | ZIP CODE | LIENHOLDER NUMBER (Contact Lienholder & get this) | DATE OF LIEN | | |
|------|-------|----------|------|------|-----|-----|
| | | | | MO. | DAY | YR. |
| Tupelo | MS | 38802 | 640220550-00 | 11 | 16 | 2015 |

2ND LIENHOLDER NAME   STREET ADDRESS

| CITY | STATE | ZIP CODE | LIENHOLDER NUMBER (Contact Lienholder & get this) | DATE OF LIEN | | |
|------|-------|----------|------|------|-----|-----|
| | | | | MO. | DAY | YR. |

NAME OF SELLER                BY _____   AUTHORIZED SIGNATURE

I, THE UNDERSIGNED, CERTIFY THAT THE VEHICLE DESCRIBED ABOVE IS OWNED BY ME AND I HEREBY MAKE APPLICATION FOR A CERTIFICATE OF TITLE FOR SAID MOTOR VEHICLE, AND THIS VEHICLE WILL NOT BE SUBJECT TO LIEN PRIOR TO RECEIPT OF TITLE UNLESS INDICATED ABOVE.
**\*\*\* DISCLOSURE STATEMENT AND PRIVACY ACT NOTICE \*\*\***
DRIVER'S LICENSE NUMBERS ARE REQUIRED BY STATE LAW AND WILL BE USED IN THE ADMINISTRATION OF STATE MOTOR VEHICLE LAWS. THE COMMISSION IS AUTHORIZED TO COLLECT THE INFORMATION PURSUANT TO 42 U.S.C. § 405(c)(2)(C) AND MISS. CODE ANN. § 63-21-15. TITLES AND REGISTRATION RECORDS MAY BE RELEASED ONLY PURSUANT TO 18 U.S.C. §§ 2721-2725. FAILURE TO PROVIDE THE INFORMATION WILL RESULT IN THE DENIAL OF A CERTIFICATE OF TITLE.

OWNER'S SIGNATURE   _Herbert H. Howard_                MS
(PERSONALLY SIGNED IN INK BY OWNER OR AUTHORIZED REPRESENTATIVE)   DRIVER'S LICENSE NUMBER

JOINT OWNER'S SIGNATURE   _____                DRIVER'S LICENSE NUMBER
(PERSONALLY SIGNED IN INK BY OWNER OR AUTHORIZED REPRESENTATIVE) (LEAVE BLANK IF NO JOINT OWNER)

I HEREBY CERTIFY THAT THE ABOVE DESCRIBED VEHICLE HAS BEEN PHYSICALLY INSPECTED BY ME AND THAT THE V.I.N. AND DESCRIPTIVE DATA SHOWN ON THIS APPLICATION ARE CORRECT AND FURTHER, I IDENTIFIED THE PERSON SIGNING THE APPLICATION AND WITNESSED HIS SIGNATURE.

~~Renasant Bank~~
DESIGNATED AGENT                BY _____  A. V. Pres
                                          AUTHORIZED SIGNATURE

DESIGNATED AGENT NO.   640220550-00   DATE _____

**5926098**3

See reverse of copy 4 for important information   **DEPARTMENT OF REVENUE'S COPY**   APPLICATION NUMBER

**PREPARE APPLICATION USING TYPEWRITER OR COMPUTER PRINTER ONLY**

+ ☐ 1A        8710018435 ©2012, RR Donnelley. All rights reserved. - 0887

## CHAPTER 13 PLAN
### UNITED STATES BANKRUPTCY COURT
### SOUTHERN    DISTRICT OF MISSISSIPPI

Debtor: Herbert H. Howard _____ SSN: XXX-XX-3499 _____    CASE NO. 16-14342-JDW _____
Joint Debtor: _____ SSN: XXX-XX-_____    Median Income: ☑ Above ☐ Below
Address: 405 Poplar Street _____
Grenada, MS 38901 _____

**THIS PLAN DOES NOT ALLOW CLAIMS. Creditors must file a proof of claim to be paid under any plan that may be confirmed. The treatment of ALL secured and priority debts must be provided for in this plan.**

**PAYMENT AND LENGTH OF PLAN**
The plan period shall be for a period of _____60_____ months, not to be less than 36 months for below median income debtor(s), or less than 60 months for above median income debtor(s).

(A)    Debtor shall pay $____3,250.00____ (☑ monthly, ☐ semi-monthly, ☐ weekly, or ☐ bi-weekly) to the chapter 13 trustee. Unless otherwise ordered by the Court, an Order directing payment shall be issued to Debtor's employer at the following address:
   **Direct** _____
   _____
   _____

(B)    Joint Debtor shall pay $_____ (☐ monthly, ☐ semi-monthly, ☐ weekly, or ☐ bi-weekly) to the chapter 13 trustee. Unless otherwise ordered by the Court, an Order directing payment shall be issued to Debtor's employer at the following address:
   _____
   _____

**PRIORITY CREDITORS.**
Filed claims which are not disallowed are to be paid in full or as ordered by the Court as follows:

| | | | |
|---|---|---|---|
| Internal Revenue Service: | $    2,100.00 | at $    35.00 | /month |
| Mississippi Dept. of Revenue: | $    700.00 | at $    11.67 | /month |
| Other/_____: | $_____ | at $_____ | /month |

**DOMESTIC SUPPORT OBLIGATION.** DUE TO: _____
_____
_____

POST PETITION OBLIGATION: In the amount of $_____ per month beginning _____.
To be paid ☐ direct, ☐ through payroll deduction, or ☐ through the plan.

PRE-PETITION ARREARAGE: In the total amount of $_____ through _____ which shall be paid in the amount of $_____ per month beginning _____,
To be paid ☐ Direct, ☐ through payroll deduction, or ☐ through the plan.

**HOME MORTGAGES.** All claims secured by real property which are to be paid through the plan shall be scheduled below. Absent an objection by a party in interest, the plan will be amended consistent with the proof of claim filed herein, subject to the start date for the continuing monthly mortgage payment proposed herein.

| | | | |
|---|---|---|---|
| Mtg pmts to _____ | Beginning _____ | @ $_____ | ☐ Plan ☑ Direct |
| Mtg pmts to _____ | Beginning _____ | @ $_____ | ☐ Plan ☐ Direct |
| Mtg pmts to _____ | Beginning _____ | @ $_____ | ☐ Plan ☐ Direct |
| Mtg arrears to _____ | Through _____ | $_____ | @ $_____ /mo |
| Mtg arrears to _____ | Through _____ | $_____ | @ $_____ /mo |
| Mtg arrears to _____ | Through _____ | $_____ | @ $_____ /mo |

Debtor's Initials _____    Joint Debtor's Initials _____    Chapter 13 Plan, Page 1 of **3** _____



**EXHIBIT**
**6**

**MORTGAGE CLAIMS TO BE PAID IN FULL OVER PLAN TERM:**

Creditor:_____ Approx. amt. due: _____ Int. Rate: _____
Property Address: _____ Are related taxes and/or insurance escrowed ☐Yes ☐No

Creditor:_____ Approx. amt. due: _____ Int. Rate: _____
Property Address: _____ Are related taxes and/or insurance escrowed ☐Yes ☐No

**NON-MORTGAGE SECURED CLAIMS.** Creditors that have filed claims that are not disallowed are to retain lien(s) pursuant to 11 U.S.C. § 1325(a)(5)(B)(I)(I) until the payment of the debt determined as under non-bankruptcy law or discharge. Such creditors shall be paid as secured claimants the sum set out below or pursuant to other order of the Court. The portion of the claim not paid as secured shall be treated as a general unsecured claim.

| CREDITOR'S NAME | COLLATERAL | 910* CLM | APPROX. AMT. OWED | VALUE | INT. RATE | PAY VALUE OR AMT. OWED |
|---|---|---|---|---|---|---|
| One Main | 2008 Taurus | | $13,000.00 | $1,500.00 | 5% | VALUE |
| Renansant Bank | 2006 Freightliner | | $16,500.00 | $5,000.00 | 5% | AMT. OWED |
| Renansant Bank | 06 and12 Freightliner | | $250,000.00 | $141,000.00 | 5% | VALUE |
| Republic Finance | HG | | $6,097.00 | $1,000.00 | 5% | VALUE |
| Liberty Finance | HG | | $1,430.00 | $500.00 | 5% | VALUE |

* The column for "910 CLM" applies to both motor vehicles and "any other thing of value" as used in the "hanging paragraph" of 11 U.S.C. § 1325

**SPECIAL CLAIMANTS** Including, but not limited to, co-signed debts, abandonment of collateral, direct payments by Debtor, etc. For all abandoned collateral Debtor will pay $0.00 on the secured portion of the debt. Where the proposal is for payment, creditor must file a proof of claim to receive proposed payment.

| CREDITOR'S NAME | COLLATERAL | APPROX. AMT. OWED | PROPOSED TREATMENT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**STUDENT LOANS** which are not subject to discharge pursuant to 11 U.S.C. §§ 523(a)(8) and 1328(c) are as follows (such debts shall not be included in the general unsecured total):

| CREDITOR'S NAME | APPROX. AMT. OWED | CONTRACTUAL MO. PMT. | PROPOSED TREATMENT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**SPECIAL PROVISIONS** which may apply to any or all payments to be paid through the plan, including, but not limited to, adequate protection payments:

_____
_____

**GENERAL UNSECURED CLAIMS** total approximately $____143,279.00____. Such claims must be *timely filed* and not disallowed to receive payment as follows:_____ IN FULL (100%), ___5___%(percent) MINIMUM, or a total distribution of $_____, with the Trustee to determine the percentage distribution. *Those general unsecured claims not timely filed shall be paid nothing, absent order of the Court.*

Debtor's Initials _____   Joint Debtor's Initials _____   Chapter 13 Plan, Page 2 of **3**

Total attorney fee charged:        $      3,200.00
Attorney fee previously paid:      $      2,127.00
Attorney fee to be paid in plan:   $      1,073.00

The payment of administrative costs and aforementioned attorney fees are to be paid pursuant to Court order and/or local rules.

Automobile Insurance Co/Agent

_____
_____
_____

Telephone/Fax:_____

DATED: ___1/10/17___    DEBTOR'S SIGNATURE  _____

Attorney for Debtor (Name/Address/Phone/Email)
**Douglas M. Engell**
**P.O. Box 309**
**Marion, MS 39342**

Telephone No. 601-693-6311
Facsimile No.  601-639-6399
Email address  dengell@dougengell.com

JOINT DEBTOR'S SIGNATURE  _____

ATTORNEY'S SIGNATURE  _____

Chapter 13 Plan, Page 3 of **3**

Effective: October 1, 2011